## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS J. DOWNEY ) <br> 1750 16th St., NW Unit 83 ) <br> Washington, D.C. 22209 ) <br> ) <br>       Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> AMBASSADOR DEVELOPMENT, LLC ) <br> 2000 L St., N.W., #675 ) <br> Washington, D.C. 20036, ) <br> ) <br> ROBERT R. MONTAGNE, JR. ) <br> 4916 Oakcrest Drive ) <br> Fairfax, VA 22066, ) <br> ) <br> THOMAS F. DUNGAN, III. ) <br> 10005 Highill Place ) <br> Great Falls, VA 22066, and ) <br> ) <br> THOMAS DUNGAN, JR. ) <br> 7609 Partridge Berry Lane ) <br> Clifton, VA 20124 ) <br> ) <br>       Defendants. ) | Civil Action No. _____ <br><br> (Removed from the Superior Court <br> of the District of Columbia, Civil Div. <br> C.A. No. 2008 CA 003573 B) |

### NOTICE OF REMOVAL

Defendants, Robert R. Montagne, Jr., Thomas F. Dungan, III and Thomas Dungan, Jr.

("Defendants"), by and through their undersigned counsel, file this Notice of Removal of this case

from the Superior Court of the District of Columbia, Civil Division, to this Court, pursuant to 28

U.S.C. §§ 1332, 1441, and 1446, and in support of this Notice state as follows:

1.  On May 9, 2008, Plaintiff, Thomas J. Downey ("Plaintiff"), filed a complaint

against the Defendants in the Superior Court of the District of Columbia, C.A. No. 2008 CA

003573 B (the "Complaint").  A true copy of the Complaint is attached hereto as Exhibit A.

2.     The Complaint was served on the Defendants on May 19, 2008.

3.     The United States District Court for the District of Columbia has original

jurisdiction over this case pursuant to 28 U.S.C. § 1332.  This action, therefore, is one that may be

removed in its entirety to this Court by the Defendants pursuant to 28 U.S.C. § 1441(a).

4.     Plaintiff is a resident of the District of Columbia, and Defendants are all residents

of the Commonwealth of Virginia.

5.     Although Plaintiff names Ambassador Development, LLC ("Ambassador") as a

defendant, Ambassador **was** a limited liability company organized under the laws of the District of

Columbia **but was formally dissolved in November of 2006**.  Any claim against Ambassador,

therefore, is a legal nullity and cannot be used by Plaintiff to deprive Defendants of their right to

removal of this action.

6.     Plaintiff's Complaint alleges the following nine counts: (1) breach of statutory

warranty, (2) breach of contract, (3) breach of express warranty, (4) breach of implied covenant of

good faith and fair dealing, (5) breach of implied warranties, (6) strict product liability, (7)

piercing the corporate veil, (8) wrongful dissolution, and (9) de facto partnership.  The amount in

controversy is purportedly "at least $250,000." *See* Exhibit A, ¶ 30.

7.     This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332

because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of

different states.

8.     The Summons and Complaint and the Initial Order and Addendum in this action

constitute all process, pleadings and/or orders related to this matter.

9.     Pursuant to 28 U.S.C. § 1446(b), this Notice is filed within thirty (30) days after

Defendants' receipt of the initial pleading in this action.  Prior to the filing of this Notice of

Removal, Defendants have not filed any pleadings relating to this case in the Superior Court of the

District of Columbia.

      10.     The Clerk of this Court has been paid a $350.00 filing fee.

      11.     Promptly after the filing of this Notice of Removal, written notice of such filing is

being given by Defendants to Plaintiff as required by law, and a copy of this Notice is being

delivered to the Superior Court of the District of Columbia, Civil Division.

      WHEREFORE, Defendants respectfully request that this entire case be removed from the

Superior Court of the District of Columbia, Civil Division, to this Court.

ROBERT R. MONTAGNE, JR.,
THOMAS F. DUNGAN, III AND
THOMAS DUNGAN, JR.
By Counsel

By: _____
Jesse J. Ash, Esq.
D.C. Bar #:  485207
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 -- East Tower
Washington, D.C. 20005
(202) 414-9200

Michael S. Dingman, Esq. (counsel)
Richard D. Kelley, Esq. (counsel)
REED SMITH LLP
3110 Fairview Park Drive, Suite 1400
Falls Church, Virginia 22042
Phone (703) 641-4200
Fax (703) 641-4340

Attorneys for Defendants

Dated:  June 6, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June, 2008, I served by first class mail, postage

prepaid, a copy of the foregoing Notice of Removal upon:

> Richard T. Rossier, Esq.
> Marc E. Miller, Esq.
> Alex Menendez, Esq.
> McLeod Watkinson & Miller
> One Massachussetts Avenue, NW
> Suite 800
> Washington, DC 20001
> *Counsel for Plaintiff*

Jesse J. Ash

# Exhibit A



*served*
*5/19/08*
*DCF*

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

THOMAS J. DOWNEY
  Vs.                                              C.A. No.      2008 CA 003573 B
AMBASSADOR DEVELOPMENT, LLC

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge RONNA L BECK
Date:  May 9, 2008
Initial Conference: 9:30 am, Friday, August 08, 2008
Location:   Courtroom 518
         500 Indiana Avenue N.W.
         WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington,  D.C.  20001  Telephone:  879-1133

THOMAS J. DOWNEY

_____ *Plaintiff*

vs.

AMBASSADOR DEVELOPMENT, LLC

_____ *Defendant*

0003573-08

Civil  Action  No. _____

SERVE: GYFB, INC.
     2000 L ST., N.W.,#675
     Washington, DC 20036

### SUMMONS

To  the  above  named  Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed  to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**    If plaintiff has no attorney, a copy of the Answer must be mailed  to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue.  N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

RICHARD T. ROSSIER
Name of Plaintiff's Attorney

MCLEOD WATKINSON & MILLER
Address
ONE MASSACHUSETTS AVENUE N.W.

SUITE 800 WASHINGTON D.C. 20001
Telephone  (202) 842-2345

By _____
              Deputy Clerk

Date  05/09/08

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

NOTE:  SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (624-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

REC... ...ED
C... ...fice
MAY 0 ...
S...erio... ... ... ...
Distric... of ... ...mbia
Washington, D.C.

THOMAS J. DOWNEY
1750 16th Street, NW Unit 83
Washington, D.C. 20009
                    *Plaintiff,*

v.

AMBASSADOR DEVELOPMENT, LLC
2000 L ST., N.W.,#675
Washington, D.C. 20036

ROBERT R. MONTAGNE, JR,
4916 Oakcrest Drive
Fairfax, VA 22030

THOMAS F. DUNGAN, III,
10005 Highill Place
Great Falls, VA 22066

THOMAS DUNGAN, JR,
7609 Partridge Berry Lane
Clifton, VA 20124
                    *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. ___0003573-08

**JURY TRIAL DEMANDED**

<u>**COMPLAINT**</u>

Plaintiff Thomas Downey ("Downey" or "Plaintiff"), by counsel, alleges the

following as his complaint against Ambassador Development, LLC ("Ambassador LLC"),

Robert R. Montagne, Jr., Thomas F. Dungan, III and Thomas Dungan, Jr. (collectively

"Defendants").

1

This is an action addressing the failure of Defendants to properly construct/renovate a condominium unit at 1750 16th Street, NW, and the refusal of Defendants to honor their warranty relating to defects.

## PARTIES

1. Thomas J. Downey is a citizen of the District of Columbia who resides at 1750 16th Street, NW Unit 83, in Washington D.C.

2. Ambassador Development LLC ("Ambassador LLC") is a (now purportedly dissolved) limited liability company organized under the laws of the District of Columbia.

3. Robert R. Montagne, Jr. is a citizen of Virginia who resides at 4916 Oakcrest Drive in Fairfax ("Montagne"). Defendant Montagne was/is a member of Ambassador LLC and is a member of the de facto partnership Ambassador Partnership.

4. Thomas F. Dungan, III is a citizen of Virginia who resides at 10005 Highill Place in Great Falls ("Dungan III"). Defendant Dungan III was/is a member of Ambassador LLC and is a member of the de facto partnership Ambassador Partnership.

5. Thomas Dungan, Jr. is a citizen of Virginia who resides at 7609 Partridge Berry Lane in Clifton ("Dungan Jr."). Defendant Dungan Jr. was/is a member of Ambassador LLC and is a member of the de facto partnership Ambassador Partnership.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under D.C. Code § 11-921 *et seq.* because it is a civil action filed in the District of Columbia over which no federal court in the District of Columbia has exclusive jurisdiction.

7. Venue is proper in this Court because the condominium, the warranty on which is the subject of the legal dispute, is located in the District of Columbia, and the acts and failures to act described herein occurred in the District of Columbia.

8. This Court has personal jurisdiction over Defendant Ambassador LLC under D.C. Code § 13-422 because it is organized under the laws of the District of Columbia. This Court has personal jurisdiction over Defendants Montagne, Dungan III and Dungan Jr. under D.C. Code § 13-423 because they transacted business in the District of Columbia and their acts and omissions giving rise to this action occurred in the District of Columbia.


## FACTUAL BACKGROUND

9. Ambassador LLC, renovated The Ambassador, a residential building located at 1750 16th Street, NW, in the District of Columbia and converted the Ambassador to a condominium ("Condominium").

10. On September 23, 2003, Downey entered into a Purchase Agreement with Ambassador LLC to purchase Unit 83 (the "Unit" or "Unit 83") at the Condominium for $1,200,000 ("Purchase Price").

11. Incorporated into the Purchase Agreement (copy attached as Exhibit 1) by reference is the Public Offering Statement ("POS") for the Condominium which sets out a limited warranty that provides that Ambassador LLC warrants each Condominium Unit against structural defects for a period of two (2) years from the date of settlement.

12. On October 21, 2003, the date of the closing on the Purchase Agreement, Unit 83 was conveyed to Downey.

13. Beginning shortly after taking possession of Unit 83, and continuing for many months thereafter, Downey encountered a series of structural defects, including:

a.     The sub-floors were not installed properly, and as a result the floors in the Unit were warped, discolored, and separated, and had to be replaced.

b.     The HVAC system was defective, insofar as it contained the following structural defects: 1) the failure to connect some of the duct work; 2) the installation of duct work with so many bends that the function of the duct work was defeated; 3) the failure to have a cooler with the proper capacity for the square footage and southern exposure of the Unit.

c.     The water supply to the Unit created a noxious odor in the Unit when the water was turned on.

d.     Several of the Unit's windows leaked due to improper installation and sealing. These leaks led to infiltration of water between the window panes and mildew growth.

e.     The roof top terrace, a limited common element associated with Unit 83, had patio tiles, called "pavers", which were sinking due to improper installation.

14. As Mr. Downey became aware of these defects, he and his fiancé brought them to the attention of Ambassador LLC, and Ambassador LLC promised to correct them. However, the defects were not corrected by Ambassador LLC.

15. By letter dated May 11, 2005 (copy attached as Exhibit 2), Downey provided timely written notice to Ambassador LLC of his warranty claims and asserted his claim to the bond that Ambassador LLC had posted with the Mayor of the District of Columbia pursuant to the D.C. Condominium Act ("May 11 Letter").

16. The May 11 Letter demanded that Ambassador LLC repair and cure the defects in Unit 83.

17. Discussions between representatives for Downey and Ambassador LLC did not result in an agreement for a repair and cure of the defects in Unit 83.

18. Following the failure and refusal of Ambassador LLC to make the necessary repairs, Downey arranged for most of the repairs to be made by another company.

19. Pursuant to the mandatory arbitration provisions of the Purchase Agreement, by letter dated February 8, 2007 (copy attached as Exhibit 3), Downey initiated an arbitration of his breach of warranty claims against Ambassador LLC, and designated an arbitrator.

20. By letter dated February 23, 2007 and email dated April 22, 2007, Ambassador LLC's counsel, Scott Kowalski, requested an alternative designation of an arbitrator for Downey and Ambassador LLC named its own arbitrator. Thereafter, the two party-designated arbitrators discussed the naming of the neutral arbitrator.

21. When those two arbitrators had agreed in principal to the naming of the third arbitrator on or about August 17, 2007, counsel for Ambassador LLC placed a telephone call to counsel for Downey and for the first time advised him that Ambassador LLC had been dissolved.

22. Ambassador LLC was purportedly dissolved by the filing of articles of dissolution on or about November 13, 2006.

23. The purported dissolution of Ambassador LLC had been done without the legally required notice to Downey.

24. The Purchase Agreement between Downey and Ambassador LLC did not contemplate termination upon the dissolution of Ambassador LLC.

25. The contract that Downey and Ambassador LLC entered into prior to the dissolution of Ambassador LLC survives its dissolution.

26. Upon information and belief Defendants Montagne, Dungan III and Dungan Jr. wrongfully dissolved Ambassador LLC in an attempt to evade and elude Ambassador LLC's liability to Downey for warranty and other claims.

27. More specifically, Defendants Montagne, Dungan III and Dungan Jr. engaged in a pattern of deceit and deception by, on the one hand, engaging Downey, on behalf of Ambassador LLC, in the arbitration process relating to the claims associated with Unit 83 while, on the other hand, dissolving Ambassador LLC without the legally required notice.

28. Based on this course of conduct and the wrongful dissolution of Ambassador LLC, Defendants Montagne, Dungan III and Dungan Jr. are personally liable for the contractual and other obligations of Ambassador LLC.

29. By taking activities by its legal representatives holding out that Ambassador LLC continued in existence and even naming an arbitrator in the arbitration, the members of Ambassador LLC carried on operations as a de facto partnership, operating as successor to the dissolved Ambassador LLC.

30. Downey has been damaged by defendants in the amount of at least $250,000, as a result of breach of contract, breach of warranty, wrongful dissolution, and wrongful refusal to participate in arbitration of Ambassador LLC.

### Count I
### Breach of Statutory Warranty as to Defendant Ambassador LLC

31. Plaintiff incorporates by reference paragraphs 1-30 as if fully alleged herein.

32. In the POS, as required by the Condominium Act, D.C. Code § 42-1903.16(b), Ambassador LLC warranted Unit 83 against structural defects for two years from the date Unit 83 was conveyed to Mr. Downey.

33. From the date of settlement, and continuing to the date of filing this Complaint, Unit 83 has contained structural defects.

34. Ambassador LLC has refused to perform the repairs necessary to honor its statutory warranty, despite Plaintiff's repeated requests for Ambassador LLC to do so.

35. As a direct result of Ambassador's breach of warranty, Plaintiff suffered damages.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

    a.    Actual damages under Count I in favor of Plaintiff Thomas J. Downey and against Defendant Ambassador LLC, in an amount to be determined at trial;

    b.    Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

    c.    Prejudgment interest as allowed by law;

    d.    Such other and further relief that this court deems just and proper.

### Count II
### Breach of Contract as to Defendant Ambassador LLC

36. Plaintiff incorporates by reference paragraphs 1-35 as if fully alleged herein.

37. Plaintiff entered into a Purchase Agreement with Ambassador LLC pursuant to which Plaintiff agreed to pay the Ambassador LLC $1,200,000 and Ambassador LLC agreed to sell to Plaintiff Unit 83 as represented in the Agreement.

38. In the POS Ambassador LLC offered Plaintiff a condominium unit that

    a.    was "substantially renovated";

7

    b.     had "its own individual heating and air conditioning units which will supply heating and air conditioning to it";

    c.     would "be allocated a rooftop terrace"; and

    d.     was "in compliance with all applicable zoning ordinances, housing codes, building codes and similar laws."

39. Plaintiff complied with his contractual obligation to purchase Unit 83 pursuant to the Purchase Agreement.

40. Contrary to its obligation under the Purchase Agreement, Ambassador LLC provided Plaintiff with a condominium unit with serious structural deficiencies, including:

    a.     Warped, discolored, and separated flooring;

    b.     A defective HVAC system that does not properly heat or cool the unit;

    c.     Inadequate and unsafe plumbing creating a noxious odor in the Unit when in use;

    d.     Leaking windows that led to infiltration of water and mildew growth; and

    e.     Sinking pavers in the patio roof top terrace.

41. Ambassador LLC breached its obligations under the Purchase Agreement.

42. As a direct result of the Ambassador LLC's breach of contract, Plaintiff has suffered damages.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

    a.     Actual damages under Count II in favor of Plaintiff Thomas J. Downey and against Defendant Ambassador LLC, in an amount to be determined at trial;

b.    Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

c.    Prejudgment interest as allowed by law;

d.    Such other and further relief that this court deems just and proper.

## Count III
### Breach of Express Warranty as to Defendant Ambassador LLC

43. Plaintiff incorporates by reference paragraphs 1-42 as if fully alleged herein.

44. Ambassador LLC warranted in the POS that all renovations to Unit 83 were "in compliance with all applicable zoning ordinances, housing codes, building codes and similar laws," and further warranted Unit 83 against structural defects for two years from the date Unit 83 was conveyed to Downey.

45. Plaintiff relied on the skill and judgment of the Ambassador LLC, and was induced to purchase Unit 83 by these express warranties.

46. From the date Ambassador LLC conveyed Unit 83 to Plaintiff, to the date of the filing of this Complaint, Ambassador LLC has refused to repair the significant structural defects described herein, despite Plaintiff's repeated requests for it to do so, and Downey was required to make alternative arrangements to repair the defects.

47. Ambassador LLC owed a duty to honor the express warranties included in the Purchase Agreement and POS.

48. Ambassador LLC breached that duty by refusing to repair the structural defects in Unit 83.

49. As a direct result of the Ambassador LLC's breach of express warranty, Plaintiff has suffered damages.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

a.       Actual damages under Count III in favor of Plaintiff Thomas J. Downey and against Defendant Ambassador LLC, in an amount to be determined at trial;

b.       Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

c.       Prejudgment interest as allowed by law;

d.       Such other and further relief that this court deems just and proper.

### Count IV
**Breach of Implied Covenant of Good Faith and Fair Dealing as to Defendant Ambassador LLC**

50. Plaintiff incorporates by reference paragraphs 1-49 as if fully alleged herein.

51. Ambassador LLC entered into a contract with Plaintiff whereby Ambassador LLC would sell to Plaintiff a "substantially renovated" condominium unit. Ambassador LLC represented that these renovations were performed "in compliance with all applicable zoning ordinances, housing codes, building codes and similar laws."

52. The Purchase Agreement contained an implied duty of good faith and fair dealing that the parties would not do anything that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

53. Ambassador LLC knew when it entered into the Purchase Agreement with Plaintiff that Unit 83 had significant structural defects.

54. Ambassador LLC owed a duty of good faith and fair dealing to Plaintiff by virtue of entering into the Purchase Agreement.

55. By withholding the true condition of Unit 83 from the Plaintiff and by refusing to repair these structural defects, Ambassador LLC breached its duty of good faith and fair dealing.

56. As a direct result of the Ambassador LLC's breach of good faith and fair dealing, Plaintiff has suffered damages.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

    a.      Actual damages under Count IV in favor of Plaintiff Thomas J. Downey and against Defendant Ambassador LLC, in an amount to be determined at trial;

    b.      Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

    c.      Prejudgment interest as allowed by law;

    d.      Such other and further relief that this court deems just and proper.

**Count V**
**Breach of Implied Warranties as to Defendant Ambassador LLC**

57. Plaintiff incorporates by reference paragraphs 1-56 as if fully alleged herein.

58. In selling Unit 83 to Plaintiff, Ambassador LLC impliedly warranted that the unit was free from structural defects, constructed in a workmanlike manner and fit for habitation.

59. Contrary to Ambassador LLC's warranties, renovations to Unit 83 were not performed in a workmanlike manner, and the unit contained many structural defects, including

    a.      the HVAC system failed to operate, causing the unit to become sweltering on warm days;

    b.      the flooring was warped, discolored, and separated;

11

    c.    the plumbing was inadequate and unsafe and the water a noxious odor in the Unit when in use;

    d.    the leaking windows have led to infiltration of water and mildew growth; and

    e.    the pavers in the roof top terrace were sinking.

60. Ambassador LLC owed a duty to Plaintiff to honor the implied warranties in the Purchase Agreement and POS.

61. Ambassador LLC breached that duty by failing to deliver to Plaintiff a unit free from structural defects, constructed in a workmanlike manner and fit for habitation, and continuing to fail to repair Unit 83 to conform with its implied warranties.

62. As a direct result of the Ambassador LLC's breach of good faith and fair dealing, Plaintiff has suffered damages.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

    a.    Actual damages under Count V in favor of Plaintiff Thomas J. Downey and against Defendant Ambassador LLC, in an amount to be determined at trial;

    b.    Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

    c.    Prejudgment interest as allowed by law;

    d.    Such other and further relief that this court deems just and proper.

### Count VI
### Strict Product Liability as to Defendant Ambassador LLC

63. Plaintiff incorporates by reference paragraphs 1-62 as if fully alleged herein.

64. Ambassador LLC was engaged in the business of selling condominiums.

65. Ambassador LLC placed Unit 83, a defective condominium, into the stream of commerce.

66. The defects in Unit 83 were the direct and proximate cause of the damage to Plaintiff's property alleged herein.

67. Ambassador LLC is liable under products liability theory for the damages caused by the defects in Unit 83.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

    a.      Actual damages under Count VI in favor of Plaintiff Thomas J. Downey and against Defendant Ambassador LLC, in an amount to be determined at trial;

    b.      Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

    c.      Prejudgment interest as allowed by law;

    d.      Such other and further relief that this court deems just and proper.

### Count VII
**Piercing the Corporate Veil; Personal Liability of Defendants Montagne, Dungan III and Dungan Jr.**

68. Plaintiff incorporates by reference paragraphs 1-67 as if fully alleged herein.

69. At all times referenced herein, there was unity of ownership and interest by Defendants Montagne, Dungan III and Dungan Jr. in Ambassador LLC, such that the limited liability company was merely an alter ego of these individuals.

70. The separateness of Ambassador LLC and Defendants Montagne, Dungan III and Dungan Jr. was a mere fiction.

71. Upon information and belief Defendants Montagne, Dungan III and Dungan Jr. wrongfully dissolved Ambassador LLC in an effort to thwart their warranty obligations, and misled Plaintiff into believing that the limited liability company was still in existence.

72. Adherence to this corporate fiction would promote inequity and injustice.

73. Upon information and belief, Defendants Montagne, Dungan III and Dungan Jr. directly or indirectly committed tortious acts during their course of dealing with the Plaintiff, including negligent renovation of Unit 83 and wrongful failure to disclose the dissolution of the Ambassador LLC to Plaintiff.

74. As a direct and proximate result of the tortuous acts of Defendants Montagne, Dungan III and Dungan Jr., Plaintiff has suffered damages.

75. Defendants Montagne, Dungan III and Dungan Jr. are personally liable to Plaintiff for the damages caused to Plaintiff alleged herein.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

    a.    Actual damages under Count VII in favor of Plaintiff Thomas J. Downey and against Defendants Montagne, Dungan III and Dungan Jr., in an amount to be determined at trial;

    b.    Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

    c.    Prejudgment interest as allowed by law;

    d.    Such other and further relief that this court deems just and proper.

### Count VIII
**Wrongful Dissolution as to Defendants Montagne, Dungan III and Dungan Jr.**

76. Plaintiff incorporates by reference paragraphs 1-75 as if fully alleged herein.

77. Defendants Montagne, Dungan III and Dungan Jr. as Corporate officers of Ambassador LLC had a duty to comply with the terms of the Purchase Agreement, honor the Statutory, Express and Implied warranties and adhere to an implied covenant of good faith and fair dealing with respect to the Plaintiff's claims relating to Unit 83.

78. Defendants Montagne, Dungan III and Dungan Jr. had a duty to pay, satisfy, and discharge Ambassador LLC's liabilities and obligations to the Plaintiff, or make adequate provision therefore, prior to dissolving Ambassador LLC.

79. Defendants Montagne, Dungan III and Dungan Jr. breached that duty by illegally dissolving Ambassador LLC in an attempt to evade and elude Ambassador LLC's liability to Plaintiff.

80. As a direct result of the Defendants' breach, Plaintiff has suffered damages. Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

      a.      Actual damages under Count VIII in favor of Plaintiff Thomas J. Downey and against Defendants Montagne, Dungan III and Dungan Jr., in an amount to be determined at trial;

      b.      Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

      c.      Prejudgment interest as allowed by law;

      d.      Such other and further relief that this court deems just and proper.

### Count IX
### De Facto Partnership as to Defendants Montagne, Dungan III and Dungan Jr.

81. Plaintiff incorporates by reference paragraphs 1-80 as if fully alleged herein.

82. Defendants Montagne, Dungan III and Dungan Jr. through their legal counsel continued to hold themselves out as Ambassador LLC post dissolution by actively participating in the arbitration process with the Plaintiff long after the legal entity had been dissolved.

83. At the time Defendants Montagne, Dungan III and Dungan Jr., by counsel were holding themselves as Ambassador LLC, it was in fact dissolved.

84. Because of this holding out by their legal representative, and because of Downey's reasonable reliance on same, Defendants Montagne, Dungan III and Dungan Jr were operating as a de facto general partnership.

85. As individual partners, Defendants Montagne, Dungan III and Dungan Jr. are each jointly and severally liable for the partnerships' obligations to the Plaintiff.

86.  As a de facto general partnership holding itself out as Ambassador LLC, Defendants Montagne, Dungan III and Dungan Jr. and their de facto partnership became successors in interest to Ambassador LLC.

87. Downey has been injured by the actions of the three individual defendants operating as a de facto partnership because their improper actions caused him to mistakenly believe that Ambassador LLC continued to exist and was therefore asserting his claims against an entity that no longer existed.

Wherefore, Plaintiff Thomas J. Downey respectfully requests that the following relief be granted:

      a.      Actual damages under Count IX in favor of Plaintiff Thomas J. Downey and against Defendants Montagne, Dungan III and Dungan Jr., in an amount to be determined at trial;

16

b.      Reasonable attorneys' fees, costs of suit, and other expenses incurred in the litigation as provided by the terms of the Purchase Agreement;

c.      Prejudgment interest as allowed by law;

d.      Such other and further relief that this court deems just and proper.

### Jury Demand

Plaintiff Thomas J. Downey hereby demands a jury trial on all issues that may be tried by a jury in this action.

Respectfully submitted,

_____
Richard T. Rossier (D.C. Bar No. 334649)
Marc E. Miller (D.C. Bar No.948327)
Alex Menendez (D.C. Bar No. 470475)
MCLEOD WATKINSON & MILLER
One Massachusetts Avenue, NW
Suite 800
Washington, D.C. 20001
(202) 842-2345
(202) 408-7763

# EXHIBIT 1

## AMBASSADOR AT DUPONT, A CONDOMINIUM
### PURCHASE AGREEMENT

AMBASSADOR DEVELOPMENT, LLC, a District of Columbia limited liability company with an address of 3935 University Drive, Fairfax, VA 22030 ("Seller") agrees to sell and _Thomas J. Downey_ whose address for purposes of communication shall be _1225 I St. NW #600 Washington, DC 20005_ ("Purchaser") agrees to purchase, upon and subject to the terms and conditions hereinafter set forth, the Unit known or to be known as No. _83_ ("Unit") in the Condominium known as AMBASSADOR AT DUPONT, A CONDOMINIUM ("Condominium"), located on the real property designated as 1750 Sixteenth Street, N.W. Washington, D.C., together with the proportionate interest in the land, the general common areas and limited common area applicable thereto designated as Common Elements in the Plat of Condominium Subdivision. The undivided interest of the Unit in the Common Elements is equal to the percentage set forth beside the designation of the Unit on Exhibit "B" to the Declaration.

The Unit is the same premises referred to by the same designation in AMBASSADOR AT DUPONT, A CONDOMINIUM Public Offering Statement and Exhibits attached thereto and heretofore furnished by Seller to Purchaser (the "Condominium Documents") all of which are hereby incorporated herein by reference and made a part of this Agreement with the same force and effect as if set forth in full herein.

Included in the sale as part of the Unit are the fixtures and personal property to be installed by Seller in the Unit which are specified on Exhibit "A" attached to this Agreement and made a part hereof, but none others. It is agreed that all furniture, personal property, washer and dryer, furnishings, wall coverings and wallpaper exhibited in the model Units are for exhibition purposes only and are not included in the purchase price of the Unit to be sold unless otherwise expressly provided herein.

1.    Purchase Price

    A.   The agreed purchase price is    $ _1,200,000._

    B.   The purchase price shall be payable as follows:

       i. Amount paid as a Deposit by Purchaser upon execution hereof, receipt of which is hereby acknowledged by Seller   $ _60,000._

       ii. Purchaser shall pay in cash or by certified check at time of settlement $ _1,140,000._

TOTAL PURCHASE PRICE      $ _1,200,000._

2.    Escrow Deposit

Unless sooner terminated pursuant to the terms hereof, the deposit paid by Purchaser to Seller shall be held in escrow until the date of settlement when it will be paid to the person responsible for disbursement at the settlement. Such escrow funds shall be deposited in escrow account solely for deposits from purchasers of units in the Condominium separate from other funds of the Seller. Such deposit shall be retained by Seller and shall be credited to Purchaser at settlement, or if settlement is not made hereunder and Purchaser is entitled under law to the return of the deposit, the deposit shall be paid over to Purchaser. Interest shall not be paid or credited to the Purchaser on the amount of the deposit.

3.    Financing.

Seller shall have no obligation with respect to financing the purchase or assisting Purchaser in obtaining financing therefore, and this Agreement is not contingent upon Purchaser obtaining financing. If Purchaser elects to obtain financing, such shall be the Purchaser's sole obligation and the Seller makes no representations or warranties that the Purchaser will be able to obtain a commitment or a loan or as to the terms of any such commitment or loan. In such case, it is the Purchaser's obligation to obtain a loan at an interest rate and upon such other terms and conditions as are specified by the lender. However, two lenders, AccuBanc Mortgage, a Division of National City Mortgage Company, 621 King Street, Suite 200, Alexandria, Virginia 22314 and First Savings Mortgage Corporation, 1950 Old Gallows Road, 8th Floor, Vienna, Virginia 22182, have agreed to consider applications for financing the purchase of units in the Condominium in accordance with their respective underwriting requirements. If the closing for a purchase of a unit in the Condominium is conducted by Seller's designated title company, which is Settlementcorp, 5301 Wisconsin Avenue, N.W., Suite 710, Washington, D.C. 20015 **and** financing to purchase such a unit is obtained from either of the above specified lenders, Seller will give such a purchaser at closing, a credit of $2,500.00 against any lender's discount fees required to be paid by such purchaser to obtain such financing. If neither of the above named lenders are used, or if used and closing is conducted by a title company other than the Seller's designated title company for the purchase of a unit, the purchaser of such unit shall **not** be entitled to and shall not receive any such credit.

5.    No Sale Contingency.

Unless specified in a separate written contingency, neither this Agreement nor the financing is dependent or contingent on the sale and settlement or lease of other real property.

6.    Title.

At settlement title to the Lot shall be free of encumbrance; good of record and marketable subject, however, to subject only to (a) the Declaration, By-Laws and Rules and Regulations and applicable provisions of the Condominium Act of 1976 (D.C. Law 1-89), and (b) conditions, limitations, restrictions, covenants and easements of record or to be recorded prior to settlement. If Seller is unable, because of any defect in title, to deliver title as aforesaid at settlement, Seller is expressly released from all liability for damages and Seller, at Seller's option, may either (i) correct the defect if the same can be done within a reasonable time, or (ii) terminate this Agreement and cause the deposit to be returned to Purchaser.

If legal steps are necessary to remedy such defects in title, such action may be taken by Seller at its own expense whereupon the time specified herein for full settlement by Purchaser will be extended for the period necessary for such prompt action. The Property is to be conveyed in the name of _Thomas  J. Downey_ .

7.    Settlement

A.    Time and Place.  The Deed of Conveyance is to be delivered at settlement which is to be at a time and place to be designated by Seller by at least Fifteen (15) days prior written notice but in no event earlier than ten (10) days following the giving of such notice, nor later than eighteen (18) months from the date hereof, unless such date is extended by agreement of the parties in writing (such time, as the same may be extended, being hereinafter referred to as the "Settlement Date").

B.    Delay: Purchaser's Option.  If settlement shall not have occurred within eighteen (18) months after the execution of this Agreement by Purchaser due to reasons within the Seller's control, Purchaser shall have the option of either: (i) terminating this Agreement by written notice to Seller, delivered at any time prior to Seller's establishment of a settlement date, in which event Seller shall, if the Purchaser shall not than be in default, return to Purchaser the deposit, and neither party shall have any further liability to the other; or (ii) electing to proceed with the purchase of the Property when the same is completed.

C.    Force Majeure.  Seller shall complete construction of the Property, and settlement on the Lot shall occur within eighteen (18) months after execution of this Agreement by Purchaser, provided, however, that if Seller is delayed in the performance of the aforesaid obligation to complete construction of the Unit for reasons beyond the control of Seller, then the time of performance of Seller's obligation shall be extended for the period of such delay, but if

3

such delay exceeds six (6) months, the Purchaser shall have the same option as stated in Subparagraph B of Paragraph 7 of this Agreement. Reasons beyond the control of Seller include, without limitation, impossibility of performance, acts of God, strikes, failure of subcontractors to perform, fire, earthquake, flood, explosion, condemnation, acts of governmental agencies asserting jurisdiction over the Property, and any other cause which, under the law of the District of Columbia would justify or excuse the Seller's failure to complete construction within eighteen (18) months from the execution hereof.

D. Deed. Seller shall deliver to Purchaser a good and sufficient special warranty deed at settlement, prepared by an attorney designated by Seller, conveying thinned to Purchaser. Seller will deliver possession of the Unit to Purchaser at settlement.

8.    Purchaser's Representations and Warranties

As a material inducement to the Seller to enter into this Agreement, Purchaser hereby covenants, represents and warrants that he is purchasing the Unit for the purpose of using it as his primary residence and that he intends to occupy the Unit for that purpose.

9.    Seller's Obligations

Seller agrees to complete construction of the Unit, the Building in which it is contained and the related Common Elements in accordance with the provisions of the Condominium Documents and to submit such Building and Common Elements to the provisions of the Condominium Act of 1976 (D.C. Law 1-89). Seller reserves the right to substitute for any of the materials, fixtures or personal property specified in the Condominium Documents, materials, fixtures or personal property of equal or better quality. Seller also reserves the right to change such Building or Common Elements provided that any single change or aggregation of changes will not substantially vary from the Condominium Documents.

10.    Possession

Full possession of the Unit, free of all tenants and occupants, is to be delivered at the Settlement Date, the Unit to be then in substantially the condition specified in the Condominium Documents. Purchaser shall inspect the Unit not less than five (5) nor more than ten (10) days prior to the Settlement Date and shall specify by notice in writing given to Seller any manner in which Purchaser claims that the Unit does not conform to the requirements of this Agreement. Except as set forth in such written notice, acceptance of a Deed to the Unit by Purchaser shall be deemed to be full performance and discharge of every obligation of Seller hereunder.

4

11.    Risk of Loss.

By execution of this Agreement, Purchaser does not acquire any equitable ownership of or title to the Unit. The risk of loss or damage by fire or other casualty is assumed by Seller until the deed of conveyance is delivered to Purchaser at settlement.

12.    Decorating.

Furniture, wall coverings, furnishings and other personalty or decorating shown in model units or the sales office are for display purposes only and are not considered a part of the Unit or improvements for the purposes of this Agreement. Any floor plans, sketches or sales drawings shown to Purchaser are for display purposes only and may not be exactly duplicated. The Unit is being sold unfurnished and will contain only the appliances and equipment installed at the time of final inspections by Purchaser.

13.    Custom Finishing; Access.

Items in the nature of "custom finishing", decorating or the like, and any deviations from the plans and specifications of the Unit, shall be paid for by Purchaser separately and provided by Seller only as Seller and Purchaser may agree by an agreement separate from this Agreement. Purchaser shall not have access to the Property or the Unit prior to settlement and delivery of possession to Purchaser.

14.    Modifications.

Seller shall construct Unit in substantial conformity with the plans and specifications on file in the sales office. Seller shall have the right to make minor changes in dimensions of any portion of the improvements and to substitute substantially equivalent materials for any of those called for in the plans and specifications and to make any modifications or substitutions as may be required by any governmental authority or any lender, or as may be reasonably necessary to fulfill the design intent. Any dispute involving the plans and specifications shall be submitted to the architect who has prepared the plans and specifications and its judgement shall be conclusive as to the parties hereto.

15.    Inspections.

(a)  Seller shall notify Purchaser not less than five (5) days prior to settlement that the Unit is ready for inspection. Upon receipt of such notice, Purchaser shall promptly arrange for an appointment with a representative of Seller to make the inspection. At such inspection, an Inspection Form shall be completed and executed by Purchaser and by a

5

representative of Seller. Purchaser shall attend such inspection and participate in completing the Inspection Form prior to settlement. Failure of Purchaser to arrange such an appointment within the five (5) day period, or failure of Purchaser to keep such appointment, shall constitute full acceptance of the Property by Purchaser.

(b)    Seller agrees to correct as many items listed on the Inspection Form as possible prior to settlement. Those items not completed prior to settlement will be corrected as soon as workloads, supplies and weather conditions permit. Purchaser agrees that no funds shall be held in escrow for the completion of any items listed on the Inspection Form and further that settlement shall not be postponed by reason of any such incomplete items provided that a permit to occupy has been issued for the Unit by or around the date for settlement. Purchaser agrees to hold Seller harmless from all liability for defects not listed on the Inspection Form.

16.    <u>Taxes, Contribution to Working Capital and Maintenance Charges</u>

Taxes for the then current year, and estimated maintenance charges for the then current month, shall be adjusted as of the Settlement Date and the net amount thereof shall be added to or be deducted from, as the case may be, the purchase price payable by Purchaser at the Settlement Date.

In order to provide initial working capital for the Condominium, at the Settlement Date Purchaser shall deposit with the Board of Directors of Ambassador at Dupont, A Condominium, an amount equal to Three (3) months' estimated monthly maintenance charges attributable to the Unit which shall be deemed paid-in capital and such payment shall be considered an appurtenance of this Unit and shall not be separately withdrawn, assigned or transferred or otherwise separated from the Unit.

All common expenses of the Condominium shall be paid for by all Unit Owners in accordance with the percentage of interest each unit has in the common elements as set forth in the Declaration.

The Seller's current estimated annual maintenance charge on the Unit is set forth in the Public Offering Statement. The estimate set forth therein is not intended expressly or impliedly to be a guarantee of the operating expenses, but represents Seller's best estimate of such costs.

17.    <u>Brokerage</u>.

6

The parties acknowledge that _____ N/A _____ _____ N/A _____ is the broker in this transaction and shall be entitled to a commission pursuant to a separate agreement between the Seller and the broker. Purchaser agrees to pay the said commission if settlement fails to take place by reason of the Purchaser's default. Purchaser shall indemnify Seller against the claim of any other broker, including any attorney's fees incurred as a result of such claim.

18.    Adjustments

Rents, taxes, water rents, insurance and operating charges are to be adjusted to the date of transfer. Taxes, general and special, are to be adjusted according to the Certificate of Taxes as issued by the proper authority for the District of Columbia.

19.    Expenses of Closing

Purchaser shall pay all of the following expenses of closing:

A.    Any servicing and credit report fees and any premiums for any mortgagee's title insurance.

B.    All of the District of Columbia recording fees and taxes, except that Seller shall pay the District of Columbia Transfer Tax.

C.    Insurance premiums for owner's title insurance.

D.    The capital contribution provided for in Paragraph 16 hereof.

E.    Any loan origination fee.

F.    Any credit Deposit and Appraisal fee.

G.    All title company fees for services rendered including but not limited to examination of title, preparation of papers, settlement fees, notary fees, servicing and credit report fees, together with any premiums for mortgagee's title insurance.

H.    Any costs of settlement not hereinbefore mentioned.

See paragraph 3 of this Agreement with respect to a credit from the Seller under certain circumstances set forth in that paragraph.

7

20.    Default by Purchaser.

        If Purchaser shall fail to pay the Purchase Price at settlement, or shall fail to perform any of Purchaser's other obligations hereunder, then the Purchaser shall be in default. If the Purchaser is in default, the Seller may avail itself of all legal and equitable remedies, retaining the deposit on account until such time as those damages are ascertained, or the Seller may elect to terminate this Agreement by giving notice to Purchaser and may retain the deposit as liquidated damages. If the Seller retains the deposit as liquidated damages, the parties hereto shall thereupon be released from any further liability or obligation hereunder. Thereafter, Seller shall be free to sell the Unit to any third party, and Seller shall be under no obligation to account to Purchaser for any part of the proceeds of such sale.

21.    Ownership and Assignability

        A.    If two or more persons are named herein as Purchaser, their obligation hereunder shall be joint and several.

        B.    The Agreement shall be binding upon the parties hereto, their heirs, successors and assigns.

        C.    This Agreement is personal to Purchaser and Purchaser may not assign this Agreement without the prior written consent of Seller. Any purported assignment of this Agreement in violation hereof shall be voidable at the option of Seller. Seller's refusal to consent to an assignment hereof shall not entitle Purchaser to terminate this Agreement or give rise to any claim for damages against Seller. Seller may assign its rights hereunder and, if such assignment shall be for the purpose of securing a lender to Seller, Purchaser's rights hereunder shall, at the option of such lender, be subject and subordinate to the rights of such lender. Upon foreclosure or deed in lieu thereof, such lender may terminate this Agreement, whereupon the deposit shall be returned to Purchaser, and Purchaser shall be released from any further liability or obligation hereunder.

22.    Authority

        Purchaser herein specifically gives authority to Seller to file and place among the public records of the District of Columbia, all documents and instruments herein referred to, required to be filed under the laws of the District of Columbia in order to legally create and maintain in existence the Condominium. The documents and instruments shall incorporate therein such matters as may be deemed necessary, proper and expedient, in the Seller's discretion.

8

23.    Modification of Declaration

Seller reserves the right to make such modifications, additions or deletions in or to the Declaration, the By-Laws, the Plat of Subdivision and the Building Plans, as may be approved or required by any lending institution designated by the Seller to make mortgage loans on Condominium Units by institutional Purchasers or Mortgages of Deeds of Trust in the secondary mortgage market such as the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association, by title company, by public authorities, by legislation or judicial determination or such as Seller may deem advisable and in the interest of the Condominium at large, provided that none of the same, unless approved by Purchaser, shall (a) increase the relative proportion of the common expense to be borne by the Unit being sold hereunder; (b) increase the purchase price of the Unit being sold hereunder or (c) otherwise materially or adversely affect the rights of the Purchaser.

Seller hereby grants to Purchaser a period of Fifteen (15) days within which to review any modifications or amendments to the Declaration or the By-Laws made prior to conveyance which would materially or adversely affect the rights of the Purchaser or the Unit's percentage interest. Notwithstanding any other provisions of this Agreement, the Purchaser may, at his election, by written notice to the Seller, as hereinafter provided in Paragraph 17 hereof, at any time prior to midnight, local time, of the fifteenth day following the date the Purchaser has received a copy of such modifications or amendments, terminate this Agreement, in which event the Purchaser's entire deposit shall be refunded and the parties hereto shall have no further rights or liabilities under this Agreement.

If at the time of execution of this Agreement the official Surveyor's Plat has not been finally prepared and filed, it is understood and agreed that the said Plat will be provided to the Purchaser or made available to him for his examination and approval. Purchaser may cancel this Agreement within fifteen (15) days after the said Plat was provided to him if any significant matter is disclosed therein of which he was not previously aware.

24.    Notices

Any notice or communication which may be given or is required to be given pursuant to the terms of this Agreement shall be in writing, by registered or certified mail, return receipt requested, sent to the party at the address set forth herein or by personal delivery to Seller's office during business hours. The date of the notice shall be the date the sender gives the notice to the U. S. Postal Service.

9

25.   Changes from Specifications

No changes from the specifications for the Condominium Unit sold hereunder shall be valid unless made in writing and signed by Purchaser and Seller. In the event that such change requires additional cost to Purchaser, it shall be so noted on the change and Purchaser shall pay an additional deposit equal to One Hundred percent (100%) of the cost of said change as specified in the signed change order.

26.   Receipt of Public Offering Statement

Purchaser hereby acknowledges receipt of true copies of the current Public Offering Statement of the Condominium as registered with the Mayor of the District of Columbia and the Certificate of Registration issued with respect to the Condominium.

27.   Minimum Sales

Unless waived by Seller in writing, Seller's performance of its obligations hereunder is conditioned upon the sale by Seller of a minimum of sixteen (16) condominium units as evidenced by the execution and receipt by Seller of binding purchase agreements similar to this Purchase Agreement executed by purchasers who have received loan commitments. Seller shall make its best efforts to satisfy such condominium. If said condition is not satisfied or waived on or before September 30, 2003, Seller may either waive this condition or may terminate this Agreement and refund Purchaser's deposit whereupon this Agreement shall terminate, and neither party shall have any further rights against or obligations to the other.

28.   Status of Purchaser.

If this Agreement is signed by an individual who is unmarried at the time of execution hereof and at the time of settlement is married, Purchaser shall indemnify Seller from any loss that may arise by reason of the failure of Purchaser's spouse to execute any applications, mortgages, notes or other documents required by the lender. If Purchaser is married and Purchaser's spouse is not also a purchaser under this Agreement, then Purchaser shall be responsible for such spouse executing the mortgage loan documents required by the lender and the failure of such spouse to do so shall not release Purchaser from any obligations under this Agreement, and Purchaser shall hold Seller harmless from any loss as a result of the refusal of such spouse to sign any such document. If Purchaser is not a natural person, Purchaser shall indemnify Seller from any losses that may arise by reason of the failure of any of Purchaser's principal officers, owners, beneficiaries or their spouses to execute any applications, mortgages, notes or other documents required by the lender. If Purchaser files for or is adjudicated a bankrupt, makes an assignment or arrangement for the benefit of creditors, files for divorce or legal

10



separation, dies or notifies Seller of a desire to be released from this Agreement, Seller may, at Seller's sole option, terminate this Agreement and cause the deposit to be returned to Purchaser, whereupon neither party shall have any further obligation to the other hereunder. .

29.    Soil Characteristics

The Purchaser has been advised pursuant to the provisions of Title 45, Section 308 of the District of Columbia Code concerning Soil Characteristics, that the soil of the land upon which the Condominium is located is noted in the Soil Survey of the District of Columbia as Urban Land Association. The Purchaser has been further advised that it may obtain further information with respect thereto by engaging a soil testing laboratory, the District of Columbia Department of Environmental Services or the Soil Conservation Service of the Department of Agriculture.

30.    Underground Storage Tank Disclosure.

In accordance with the requirements of the D.C. Underground Storage Tank Management Act of 1990, as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (D.C. Code 5-995.1et. seq.) (the "Act") and the D.C. Underground Storage Tank Regulations, 20 DCMR Chapters 66.68 (the "Regulations"), Seller hereby informs Purchaser that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any "underground storage tanks" as that term is defined in the Act and the Regulations. Information pertaining to underground storage tanks and underground storage tank removal of which the D. C. Government has received notification is on file with the D.C. Department of Consumer and Regulatory Affairs, Environmental Regulation Administration, Underground Storage Tank Branch, 2100 Martin Luther King, Jr. Avenue, S.E., Washington, D.C., telephone (202) 404-1107.

31.    Historic District Designation

The property is located within the boundaries of the Sixteenth Street Historic District, pursuant to D.C. Code 6-1001 ET. Seq. Any alterations to the exterior appearance of a building or structure or its site, as well as any demolition or new construction of a building or structure within an Historic District is subject to the D.C. Historic Landmark and Historic District Protection Act of 1978 as codified therein, as the same may be amended from time to time.

32.    Entire Agreement

This Agreement, together with the Condominium Documents, and Exhibit "A" hereto, contains the entire agreement of the parties. Purchaser has relied only

11



upon the warranties or representations set forth in this Agreement and the Condominium Documents, and Purchaser hereby waives, to the extent permitted by law, any and all implied warranties. No oral warranties, representations or statements shall be considered a part hereof nor shall this Agreement be terminated or modified except by a written instrument signed by both parties and except as otherwise expressly provided in this Agreement. Any and all changes, deletions, omissions, additions and/or deviations from the printed form of this Agreement or any attachments hereto, other than the appropriate completion of the "blanks" which appear herein are agreed to be in excess of the authority of Seller's sales representatives, shall be of no force, effect, or validly and shall not be binding upon Seller, unless initialed as "Approved" by Seller. The warranties and representations set forth in this Agreement and the Condominium Documents are solely for the benefit of Purchaser named herein and do not extend to any subsequent purchaser of the Unit.

33. <u>Governing Law</u>.

This Agreement shall be governed and construed in accordance with the laws of the District of Columbia.

34. <u>Environmental Risk</u>.

Seller does not warrant any building materials used in the Property to be free from toxicity to occupants or users and therefore disclaims any liability arising therefrom. Seller is not responsible for personal allergic, health reactions, injury or property damage arising from environmental or ecological conditions present at the Property or from their prior use.

35. <u>Miscellaneous</u>.

Subject to the provisions hereof, this Agreement shall bind and inure to the benefit of the parties thereto, their heirs, personal representatives, successors and assigns, effective as of the date of execution. The invalidity of any provision of this Agreement shall not affect the validity or enforceability of any other provision set forth herein. Notwithstanding anything to the contrary herein contained, acceptance of delivery of the deed at settlement shall constitute Purchaser's acknowledgment of full compliance by Seller with the terms of this Agreement. The terms hereof shall be merged into and extinguished by delivery of the deed at settlement except for paragraphs 30, 32 and 34 which shall survive delivery of the deed and shall not be merged therein. Time is of the essence in this Agreement.

12

36.   Arbitration.

Any dispute arising under and pursuant to this Agreement and/or with respect to any claims arising by virtue of any representations alleged to have been made by the Seller, its agents or any of their employees shall be settled and finally determined by arbitration through the auspices and under the rules of the American Arbitration Association and not by a court of law, irrespective of whether such claims arise prior to or after settlement hereunder. The party having any claim shall notify the other party in writing specifying such claim in detail and naming an independent third party as the claimant's arbitrator. The party receiving such notice shall in turn appoint an arbitrator to act for it, and the two arbitrators so selected shall in turn select a third arbitrator. A decision of the majority of the arbitrators shall be final and binding upon all parties and judgments upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Each party shall bear the cost of its own arbitrators and shall share the cost of third arbitrator selected. It is expressly understood and agree that arbitration as aforesaid shall be a condition precedent to maintenance of a suit at law or in equity.

37.   RECEIPT OF PUBLIC OFFERING STATEMENT;

THE UNDERSIGNED HEREBY ACKNOWLEDGES RECEIPT FROM SELLER OF A COMPLETE COPY OF THE PUBLIC OFFERING STATEMENT FOR THE CONDOMINIUM BY INITIALING THIS AGREEMENT HERE:
(Initials: _____ )

38.   Purchaser's Right to Cancel

Purchaser shall have a period of Fifteen (15) days within which to review the Condominium Documents made available to Purchaser pursuant to the Condominium Act of 1976, and any regulations issued thereunder. Notwithstanding any other provisions of this Agreement, Purchaser may, by written notice to Seller, sent by registered or certified mail (or personal delivery to Seller's office during business hours) at any time prior to midnight local time of the Fifteenth (15) day following the date of this Agreement or of the Fifteenth (15) day following receipt of the current Public Offering Statement with respect to the Condominium, whichever is later, terminate this Agreement, whereupon the Deposit shall be refunded and the parties hereto shall have no further rights or liabilities under this Agreement.

13

<u>Spanish Equivalent of Paragraph 38</u>
<u>El derecho del Comprador de rescindir el Contrato</u>

El Comprador tendra un periodo de quince (15) dias para revisar los Documentos de Condominio que le seran proporcionado en cumplimiento de law Ley [Ley de Condominios del Distrito de Columbia de 1976] y de todo relamento complementario.  No obstane otra provision cualquiera de este Contrato, el Comprador puede, por notificacion escrita al Vendedor, enviada por correo certificado (o entregada personalmente a la oficina del Vendedor durant las horas de negocio), en cualquier momento antes de la radianoche, hora local, del deimoquinto dia despues de la fecha de este Contrato o el decimoquinto dia despues de haber recibido la declaracion correinte de oferta publica con respecto al Condominio, sequn cual sea la fecha mas tarde, terminar este contrato, en cuyo caso el Deposito entero del Comprador le sera devuelto y los contractantes no tendran mas derechos ni obligaciones bajo este Contrato.

14

IN WITNESS WHEREOF, the parties have executed this Purchase Agreement on the dates set below the respective signatures of the parties hereto.

PURCHASER(S)

_131. 40. 9877_
Social Security Number

_____
Social Security Number

_____ (SEAL)

_____ (SEAL)

On ___9/23/03___
        (Date)

Address _1225 I St. NW Suite 600. Washington, DC 20005_

Telephone (Home) _202 . 253.1442_

Telephone (Office) _202. 789. 1110_

SELLER

AMBASSADOR DEVELOPMENT, LLC
A District of Columbia liability company

By_____

The undersigned acknowledges receipt of the deposit as set forth above on this _23rd_ day of ___Sept___, 200_3_

_____
Sales Representative

15

ACKNOWLEDGMENT OF UNDERGROUND STORAGE TANK DISCLOSURE

THE UNDERSIGNED PURCHASER HEREBY ACKNOWLEDGES THAT
PURCHASER HAS READ AND REVIEWED SECTION 17 OF THIS AGREEMENT
REGARDING THE UNDERGROUND STORAGE TANK DISCLOSURE PRIOR TO
SIGNING THIS AGREEMENT.

Date: 9/28/03

(Purchaser)

① Replace wine rack with open shelving

② Replace "Duet" washer/dryer w/ Bosch front-loading
stacked washer/dryer and divide current closet
and make one half a coat closet

③ Remove ceiling fans from penthouse floor and replace w/ recessed lights

④ install same ceiling fan in sunroom (centered) located
off living room

⑤ Remove middle mantle and drywall over that indented space

⑥ install glass shelving in last right alcove in LR/DR

⑦ Bring drywall of second, larger column out to ceiling
line, lining up w/ first, smaller column
and match ceiling bump-out

⑧ Replace master Bedroom doors w/ sliding pocket doors

⑨ Replace berber carpeting on staircase w/ maple
Risers (skids)

⑩ install moulding around marble hearth on fireplace

⑪ Replace white electrical face plates under kitchen "bar"
with wooden ones to match

⑫ install hose bib on Roof deck

⑬ Replace the warped, mahogany door on Roof terrace

⑭ install ceiling fan in center of 3rd, smallest bedroom

⑮ Screen around a/c units near the Roof terrace

⑯ First bedroom on right, bathroom door and closet door

⑰ install closets to be replaced w/ pocket doors

<u>PURCHASER SHOULD READ THIS DOCUMENT FOR HIS OWN PROTECTION</u>

## PUBLIC OFFERING STATEMENT

Name of Condominium:  AMBASSADOR AT DUPONT, A CONDOMINIUM

Location of Condominium:  1750 Sixteenth Street, N.W.
Washington, D. C. 20009

Lot: 93          Square: 178          A.N.C. No.: 2A

Name of Declarant:  Ambassador at Dupont, LLC, a District of Columbia limited liability company

Address of Declarant:      3935 University Drive
Fairfax, VA 22030

Effective Date of Public Offering Statement:

District of Columbia law requires that the original seller of Condominium Units disclose fully and accurately the characteristics of the Condominium Units being offered for sale. This Public Offering Statement is the means by which such disclosure is to be made. In the event of any misrepresentations made herein, the Purchaser shall notify the Chief, Condominium and Cooperative Conversion & Sales Branch of the Department of Consumer and Regulatory Affairs, 941 N. Capitol Street, N.E., 7th Floor, Washington, D.C. 20002.

No Declarant may dispose of any interest in a Condominium Unit unless there is delivered to the Purchaser a current Public Offering Statement by the time of such disposition and such disposition is expressly and without qualification or condition subject to cancellation by the Purchaser within Fifteen (15) days after delivery of the current Public Offering Statement or the execution of the Purchase Agreement, whichever is later. The Purchaser should inspect the Condominium Unit and all common areas and obtain professional advice. The District of Columbia Government does not warrant the accuracy of the statements made herein, nor has it passed on the merits of the Condominium Units offered for sale.

<u>PURCHASER SHOULD READ THIS DOCUMENT FOR HIS OWN PROTECTION</u>

Limited Common Elements are those Common Elements of the Condominium which only a limited number of designated Unit Owners or a single Unit Owner have the right to use or enjoy, and include those areas designated as "Limited Common Elements" on the Condominium Plat such as parking spaces, balconies, roof terraces and the like. In general, the responsibility for the maintenance and repair of the Limited Common Elements rests with the individual Unit Owner who is given the exclusive right to the use and enjoyment of a particular Limited Common Element.

As of the printing of the Public Offering Statement, construction of the building has commenced. It is estimated that construction of the building and all Common Elements will be substantially completed in the first calendar quarter of 2003.

C.    WARRANTIES

In accordance with the requirements of the Condominium Act, the Declarant warrants each Condominium Unit against structural defects for a period of two (2) years from the date of settlement. The Declarant has also warranted the Common Elements of the Condominium against structural defects for a period of two (2) years from the date the same have been completed or, if later, for a period of two (2) years from the date the first Condominium Unit has been conveyed by the Declarant to its initial Purchaser. For purposes of these warranties, the expression "structural defects" has been defined to mean any defects in the components of the Condominium Unit or the Common elements of the Condominium which reduce the stability or safety of the structure below accepted standards or which restrict the normal intended use of all or a material part of the structure and which require repair, renovation, restoration or replacement. Nothing contained in the warranty shall be construed to make the Declarant liable or responsible for any items of maintenance relating to the Condominium Units or to the Common Elements of the Condominium. Warranties on appliances, fixtures and equipment within the Condominium are limited, both as to scope and duration, to the limits of the manufacturer's warranties.

The Declarant has established the following limitations with respect to such warranties and will not be liable on account of such warranties with respect to any of the following:

1.    Loss or damage with respect to any claim unless written notice by registered mail of the defect causing such loss or damage shall have been delivered to the Declarant within the warranty period.

2.    Loss or damage caused or occasioned by defects or defective design or materials supplied by any Unit Owner or by the Association or installed under his or its direction or supervision.

3.    Any secondary or consequential damage caused by any defect, including personal injury or damage to personal property.

4.    Normal wear and tear of any portion of the Condominium.

5.    Loss or damage occasioned by the negligence, improper maintenance or operation, or alteration of parties other than the Declarant, its Subcontractors or its Agents.

8

6.    Accidental loss or damage, including, without limitation, loss or damage caused by fire, windstorm, flood or other casualty.

7.    Loss or damage due to the failure of any Unit Owner or the Association of Unit Owners to keep and maintain the Condominium Units and the Common Elements of the Condominium in good repair and condition.

8.    Stoppage in any component of the plumbing system caused by the negligence or abuse of the Unit Owners or the Association of Unit Owners.

9.    Minor defects or "smudges" in painted surfaces, minor chipping of porcelain or ceramic tiles and the like.



The Association shall be required to follow the procedures set forth in the warranty and the Bylaws (including mediation) before litigation may be instituted for a breach of the common elements warranty. No suit or other proceeding to enforce the warranties of the Declarant may be brought after one (1) year from the date such warranty has expired, except for suits based upon structural or other defects which occurred within the warranty period but which are latent and undetected defects, and no such suit or other proceeding shall be brought after six (6) months from the date the defect is discovered.

The warranties offered by the Declarant should be considered as "limited warranties," both as to scope and duration.

D.    COMPLIANCE WITH ZONING, HOUSING AND BUILDING CODES

The Property is zoned R5D. The development of the Condominium is, to the best of Declarant's knowledge, in compliance with all applicable zoning ordinances, housing codes, building codes and similar laws affecting the Condominium. All site plans, building permits and other permits necessary for the development and construction of the Condominium have been, as the circumstances may require, duly approved or validly issued.

E.    CONSTRUCTION OF RENOVATIONS FOR THE PROJECT

It is anticipated that the project will be completed in the first calendar quarter of 2003. The estimated cost of construction of the renovations to the Condominium is $5,494,730. Construction is be financed from the funds borrowed from Wachovia Bank, N.A. and secured by a deed of trust on the Property. The plans of the Condominium which clearly locate all Units and all Common Elements are attached hereto as Exhibit III-A.

F.    CONDITION OF THE STRUCTURE

The present condition of all of the structural and major utility installations in the Condominium have been inspected and evaluated by the architect, Eric Colbert, AIA. His report is attached hereto as Exhibit III-B. His report states the present condition of the building, an evaluation of the renovations to be made to the building, the remaining useful lives and the 2002 replacement costs of the major components of the building as completed with the proposed renovations. The Declarant has relied upon the expertise of the architect and has not independently verified the information. No express or implied guaranties shall be inferred from

9

# EXHIBIT 2

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

DANIEL H. ROSENTHAL
(202) 434-5817
drosenthal@wc.com

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 11, 2005

## VIA REGISTERED MAIL

Robert R. Montagne, Jr.
President
Ambassador Development, LLC
3935 University Drive
Fairfax, VA 22030

          **Re:**     **Notice of Defects in the Design or Construction of Common Elements and Unit 83**

Dear Mr. Montagne:

       I am writing on behalf of Thomas Downey, owner of the penthouse apartment (Unit 83) in the Ambassador at Dupont Condominium, to provide Ambassador Development, LLC (the "Declarant"), and Walnut Street, LLC (the "Contractor") with formal written notice of defects in the design or construction of certain Common Element and Unit defects.

       Mr. Downey has had regular communications with Brian Williams and others from your office throughout the last twenty months. Despite these communications with regard to various apartment issues, the following defects remain:

-    The Unit suffers from a significant and potentially dangerous water problem that is the result of either a Unit structural defect or a Common Element issue with the building's pipes and water pumps. Without proper testing, it is difficult to discern the source and nature of the problem. However, the inconsistent water odor and pressure levels are troubling and require immediate attention.

WILLIAMS & CONNOLLY LLP
  Robert R. Montagne, Jr.
  May 11, 2005
  Page 2

- The HVAC system has never functioned properly within the Unit. Despite the passage of more than a year since Mr. Downey first raised this issue, the Unit's heating and cooling system continues to produce an abnormally inconsistent temperature throughout the Unit. This appears to be a structural defect related to the design and installation of the HVAC system. As you know, your contractor recently discovered that a duct in the master bedroom had never been connected, meaning that heated or cooled air was funneling through the system but not reaching the room. Other structural defects still exist and must be remedied immediately, especially with the imminent summer heat and humidity.

- The rooftop terrace appears to be a Limited Common Element. As Mr. Williams is aware, the patio tiles have been sinking due to improper installation.

- Moreover, the roof itself may not be pitched and sealed correctly. Even moderate rainstorms produce standing water on the roof that lasts for days and leaves a visibly corroded surface. Please advise whether your position is that this defect is related to a Common Element properly within the Ambassador at Dupont Condominium Association, Inc.'s (the "Association's") domain.

- Despite multiple replacements and refinishes, the Unit's floors continue to be defective. They are warped in spots, were improperly finished (which has produced a discoloration), and the floor boards have separated in a number of areas. We appreciate your offer to refinish portions of the floor yet again but we would prefer a more permanent solution to what has been a recurring problem.

- Several of the Unit's windows leak due to improper installation and sealing. As a result, water has leaked into the space between the window panes and has led to the growth of mildew.

We recognize that Common Elements are, at the present time, subject to Article XII of the Association's By-Laws. The same is not true for Unit Elements. For procedural purposes, please confirm your position as to whether each of these issues is related to a Common Element or Unit defect. With respect to any Limited Common Elements, this letter constitutes formal written notice of defects in design or construction, pursuant to Article XII, Section 1, of the Association's By-Laws.

We request swift resolution of these and any other defects that may exist through either repair by approved and reputable contractors or mutual agreement on an appropriate level of monetary compensation. In addition, during the pendency of these repairs, we would expect

WILLIAMS & CONNOLLY LLP
Robert R. Montagne, Jr.
May 11, 2005
Page 3

compensation for any and all collateral damage that may result from repair of these and other defects. As an example, you have agreed to clean two couches that were soiled during a prior floor refinishing, and we expect that you will comply with that agreement.

Finally, pursuant to D.C. Code Section 42-1903.16, the Declarant has posted a construction bond to satisfy any costs arising from the Declarant's failure to satisfy the Code's requirements. We expect that the Declarant will not reduce the construction bond pending resolution of these claims, as is required under D.C. Code Section 42-1903.16(e)(2). Please notify us immediately if you intend to reduce any portion of the bond.

We appreciate your attention to these matters and look forward to resolving them with expediency and minimal disagreement. Please send your response or written inspection request directly to me within thirty days. Please do not hesitate to contact me in the interim if you wish to discuss these issues.

Sincerely,

Daniel H. Rosenthal

cc:    Lawrence A. Miller, Esq.

# EXHIBIT 3

LAW OFFICE

# MCLEOD, WATKINSON & MILLER

MICHAEL R. MCLEOD
WAYNE R. WATKINSON
MARC E. MILLER
RICHARD T. ROSSIER
DEVARIESTE CURRY
RICHARD PASCO
ALEX MENENDEZ
AMY B. JONES
CHRISTOPHER J. SALISBURY

ONE MASSACHUSETTS AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20001-1401
(202) 842-2345
TELECOPY (202) 408-7763

ROBERT RANDALL GREEN
LAURA L. PHELPS
DAVID R. GRAVES
GOVERNMENT RELATIONS
———
KATHRYN A. KLEIMAN**
OF COUNSEL
(**Admitted in Virginia only)

February 8, 2007

**BY HAND DELIVERY AND
ELECTRONIC MAIL DELIVERY**
Ambassador Development, LLC
3950 Chain Bridge Road
Fairfax, VA  22030

Re:    **Demand for Arbitration**

Dear Sir or Madam:

    This firm represents Carol Browner and Thomas J. Downey ("Purchaser") in connection with warranty claims that they have against Ambassador Development, LLC (the "Seller") arising out of Mr. Downey's September 2003 Purchase Agreement ("Agreement") with the Seller for Unit 83 at the Ambassador at DuPont Condominium (the "Condominium") in the District of Columbia. Section 36 of the Agreement provides that any dispute arising under the Agreement is subject to binding arbitration and that the arbitration is a condition precedent to the filing of a lawsuit. This letter constitutes Purchaser's written notice of his Demand for Arbitration pursuant to Section 36 of the Purchase Agreement. Purchaser hereby demands arbitration of the claims set forth below.

**Background**

    As you know, The Ambassador at DuPont Condominium was registered with the District of Columbia on November 13, 2002, by virtue of the Seller's filing of the Application and Public Offering Statement ("POS"). The September 2003 Purchase Agreement between the parties incorporated the POS and all of its attachments into the Purchase Agreement and they were thereby made a part thereof. Unit 83 of the Ambassador at DuPont Condominium was conveyed to Purchaser on or about October 21, 2003.

    In the POS, the Seller warranted to the Purchaser that the Condominium Unit would be free from structural defects for a period of two years from the date the Condominium Unit was conveyed to Purchaser. POS at 8. The warranty period covered the two year period from October 21, 2003 to October 21, 2005. "Structural defects" as used in the warranty is defined by the D.C. Code as any defect that "reduces the stability or safety of the structure below standards commonly accepted in the real estate market, or restricts the normally intended use of all or part of the structure and which requires repair, renovation, restoration, or replacement." D.C.Code Ann. § 42-1903.16 (a). A judicial proceeding to enforce the breach of the warranty is required to

McLEOD, WATKINSON & MILLER

February 8, 2007
Page 2

be commenced within 5 years after the date the warranty period began. D.C.Code Ann. § 42-1903.17, or by October 21, 2008.

The Purchaser immediately encountered a number of substantial problems with Unit 83 once he took possession in October 2003. These included some floors that had to be replaced and refinished, an upstairs door that had to be replaced and a bath that had to be replaced due to improper installation of the toilet that created a slow leak. By letter dated May 11, 2005 from Purchaser's lawyer, Daniel H. Rosenthal of Williams and Connolly LLP, Seller was formally notified of a number of warranty claims the Purchaser had against the Seller. These claims included:

1.    "Despite multiple replacements and refinishes, the Unit's floors continue to be defective." The defects include warping, discoloration, separation, and other serious and material defects in the flooring that the Seller repeatedly has failed to adequately correct.

2.    An HVAC system that has "never functioned properly" and that produces abnormally inconsistent temperatures throughout the Unit. The HVAC was materially and structurally defective in that it was improperly designed, improperly installed, and improperly sized to the volume of air that would need to be heated and cooled.

3.    The roof top terrace, a limited common element associated with Unit 83, has "patio tiles that have been sinking due to improper installation."

4.    A significant and potentially dangerous water problem that results in the water having an unusual and distinctly foul odor.

5.    Window leaks. "Several of the Unit's windows leak due to improper installation and sealing." These leaks have led to infiltration of water between the window panes and mildew growth.

This May 2005 notice letter also asserted the Purchaser's claim to the bond Seller had posted with the Mayor of the District of Columbia pursuant to the D.C. Condominium Act. The Purchaser advised Seller of the requirement that it not reduce the amount of that bond below the amount of the asserted claims while the asserted claims were pending, in accordance with D.C.Code Ann. § 42-1903.16 (e)(2).

As of February 6, these five structural defects in Unit 83 of which Seller was duly notified during the warranty period have not been cured. Indeed, the Seller's most recent effort to resolve these matters falls well short what the warranty requires. By letter dated October 30, 2006, Robert R. Montagne, on behalf of Seller, offered a total of $7,300 to finally cure these substantial warranty claims. Such an offer is wholly inadequate and entirely unacceptable to Purchaser.

MCLEOD, WATKINSON & MILLER

February 8, 2007
Page 3

In summary, the structural defects covered by the warranty which have not yet been adequately repaired or replaced include the following:

Flooring  The floors of Unit 83 are, and continue to be, structurally defective because, among other things, the sub-floor was not installed properly.  The Seller has failed and refused to remedy the defective sub-floor.  As a result Seller has only proposed and implemented "band aid" type repairs that entirely fail to address the defective sub-floor that is one of the causes of the other flooring problems.  Purchaser demands that Seller be required to pay Purchaser for the reasonable cost of the removal of the sub-floor, the proper installation of a new sub-floor, and the installation of a new floor of the same kind and quality as the original floor of the Unit.

HVAC  The HVAC system in Unit 83 at the time of conveyance was defectively designed and improperly installed.  The HVAC system that was installed was wholly inadequate for the size of the space to be heated, cooled, and ventilated.  Among the structural defects was (1) the failure to connect some of the duct work (thus some duct work simply was hung, but never functioned as part of the system as intended), (2) the installation of duct work with so many bends that the function of the duct work was defeated (too many bends in the ducts means that the air blown into one end of the duct work will not come out of the other end), and (3) the failure to have a cooler with the proper capacity to cool Unit 83.  Purchaser demands that Seller pay Purchaser the sum necessary to properly design and install an adequate and functioning HVAC system in Unit 83, and to remove the defective and inadequate HVAC system that was previously installed by the Seller.

Rooftop Terrace   The patio tiles that are installed for the rooftop terrace, a Limited Common Element, were improperly installed and are sinking.  The patio tiles need to be replaced and the new tiles properly installed.

Water   Purchaser demands that Seller pay a sum sufficient to permit Purchaser to retain an expert in plumbing to investigate the water supply system at Unit 83 and in the Condominium to determine what structural or other serious defect is causing the water from the faucets in Unit 83 to have such a distinctly foul and unpleasant odor, and to propose and implement an appropriate remedy for same.  Purchaser also demands that Seller be required to pay all such additional sums as may be required to implement the remedy proposed by the plumbing expert to be retained by Purchaser for this purpose.

Window Leaks   The window leak problems of which Purchaser has provided notice to Seller have not been properly remedied by the Seller.

## ISSUES SUBMITTED FOR ARBITRATION

Accordingly, Purchaser hereby demands arbitration of the following issues:

McLEOD, WATKINSON & MILLER

February 8, 2007
Page 4

1. Has Seller breached its warranty to Purchaser by failing to fix the defective flooring in Unit 83 despite multiple notices of this problem during the warranty period, including, but not limited to, Daniel Rosenthal's letter dated May 11, 2005.

2. Has Seller breached its warranty to Purchaser by failing to fix the defective HVAC System in Unit 83 despite multiple notices of this problem during the warranty period, including, but not limited to, Daniel Rosenthal's letter dated May 11, 2005.

3. Has Seller breached its warranty to Purchaser by failing to fix the defective installation of patio tiles on the rooftop terrace that is a limited common element associated with Unit 83 despite multiple notices of this problem during the warranty period, including, but not limited to, Daniel Rosenthal's letter dated May 11, 2005.

4. Has Seller breached its warranty to Purchaser by failing to fix the defective water supply system for Unit 83 despite multiple notices of this problem during the warranty period, including, but not limited to, Daniel Rosenthal's letter dated May 11, 2005.

5. Has Seller breached its warranty by failing to properly and completely fix the defective and leaking windows in Unit 83 despite multiple notices of this problem during the warranty period, including, but not limited to, Daniel Rosenthal's letter dated May 11, 2005.

6. If the Panel decides that Seller has breached its warranty to Purchaser, what sum should Seller be required to pay Purchaser to adequately compensate Purchaser for Seller's breach of warranty?   What costs incurred by Purchaser in connection with this arbitration should be reimbursed by Seller?   In connection with Issue 3 above, what order should the Panel put in place so that the amount necessary to repair the defective water supply system can be funded by Seller?

**Designation of Name and Address of Arbitrator selected by Purchaser**

The arbitrator selected by Purchaser is:

Marc E. Miller, Esq.
McLeod, Watkinson & Miller
One Massachusetts Ave., NW, Suite 800
Washington, DC 20001

Please refer to Section 36 of the Purchase Agreement regarding your response to this Demand for Arbitration. Please provide your written response within fifteen (15) days following your receipt of this notice and in your response please include a clear statement of your position concerning each of the issues in dispute and the name and address of the arbitrator you select as one of the arbitrators to hear the dispute.

McLEOD, WATKINSON & MILLER

February 8, 2007
Page 5

We suggest that the parties stipulate that the location for the arbitration hearings in this matter be the law offices of McLeod, Watkinson & Miller at the address noted above.

### Conclusion

In conclusion, for the foregoing reasons, the Purchaser respectfully demands arbitration of these warranty claims and requests that the Panel decide the foregoing questions in favor of the Purchaser and resolve this matter at the earliest possible date. Purchaser further requests that an award of expenses and costs incurred in connection with preparing for and participating in this proceeding.

Very truly yours,

Richard T. Rossier

cc:    Marc E. Miller, Esq., Purchaser's Designated Arbitrator

ND: 4848-6582-7585, Ver 1



**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Thomas J. Downey | Ambassador Development, LLC<br>Robert R. Montagne, Jr.<br>Thomas F. Dungan, Jr.<br>Thomas Dungan, Jr. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)    11001<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Richard T. Rossier, Esq.<br>Marc E. Miller, Esq.<br>Alex Menendez, Esq.<br>Mcleod Watkinson & Miller<br>One Massachussets Avenue, NW<br>Suite 800<br>Washington, DC  20001<br>202-842-2345 | Jesse J. Ash, Esq.<br>Michael S. Dingman, Esq.<br>Richard D. Kelley, Esq.<br>Reed Smith LLP<br>1301 K Street, NW<br>Suite 1100 - East Tower<br>Washington, DC 20005<br>202-414-9200 |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 2 U.S. Government
   Defendant

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ◉ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐   410 Antitrust

○ **B.** *Personal Injury/*
     *Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency*
     *Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
     Administrative Agency is Involved)

○ **D.** *Temporary Restraining*
     *Order/Preliminary*
     *Injunction*

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*      **OR**      ○ **F.** *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
     defendant
☐ 871 IRS-Third Party 26
     USC  7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
     of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
     Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
     Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
     Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
     Exchange
☐ 875 Customer Challenge 12 USC
     3410
☐ 900 Appeal of fee determination
     under equal access to Justice
☐ 950 Constitutionality of State
     Statutes
☐ 890 Other Statutory Actions (if
     not administrative agency
     review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ● 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Breach of contract action between purchaser and members of LLC.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 250,000    Check YES only if demanded in complaint    JURY DEMAND: YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 6/6/08    SIGNATURE OF ATTORNEY OF RECORD    *June Ch* 

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_Thomas J. Downey_
Plaintiff

v.

Civil Action No. **08 0982**

**JUN - 6 2008**

_Ambassador Development, LLC,_
Defendant                    _ETAL_

The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **BATES, J. JDB** . All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _Maureen Higgins_
Deputy Clerk

cc: _Richard T. Rossier_
    _Ambassador Development_

929A
Rev. 7/02